FILED
2019 May-24  AM 11:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| CLARISSA ARNOLD, ET AL., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CLASS ACTION |
| | ) | |
| | ) | CIVIL ACTION NUMBER: |
| | ) | |
| | ) | |
| | ) | JURY DEMAND |
| | ) | |
| AMERICAN FAMILY CARE, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT**

## I.   **INTRODUCTION**

1.     This is an action for declaratory judgment, injunctive relief, equitable relief and monetary relief instituted to secure the protection of and to redress the deprivation of rights secured through Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, and 42 U.S.C. § 1981, as amended, each providing relief for discrimination in employment based on race and/or color.

## II.   **JURISDICTION**

2.     The jurisdiction of this Court is invoked under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981, as amended, and 28 U.S.C. §§ 1331 and 1343.

### III.  PARTIES

3.     Plaintiff, Clarissa Arnold is a female, African-American citizen of the United States who fulfilled all conditions precedent to the institution of this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.  The plaintiff has filed and/or relied upon a timely charge of race and/or color discrimination with the EEOC.  A right-to-sue letter was issued on her charge of race and/or color discrimination under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, and this suit has been filed within 90 days of receipt of such right-to-sue letter.  No condition precedent exists as to the institution of this action under 42 U.S.C. § 1981, as amended.

4.     The defendant, American Family Care, Inc., (hereafter "AFC"), is subject to suit under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 and 42 U.S.C. § 1981, as amended.  Defendant does business in this jurisdiction.

### IV.  CLASS CERTIFICATION ALLEGATIONS

5.     Under Title VII of the 1964 Civil Rights Act, as amended, the plaintiff sues on behalf of herself and all current or former salaried paid, African-American employees of AFC, and/or all current or former salaried paid employees of color, holding the title of Clinic Manager, later titled Team Leaders, hereafter collectively referred to as "Clinic Manager(s) or clinic manager(s)," to redress the defendant's

widespread and pervasive race and/or color discrimination favoring white, Non-African-American employees relative to compensation, pay increases, fringe benefits, and/or benefits associated with hiring and promotion.  Under 42 U.S.C. § 1981, the plaintiff sues on behalf of herself and all current or former salaried paid, African-American employees of AFC holding the title of Clinic Manager, to redress the defendant's widespread and pervasive race discrimination favoring Non-African-Americans relative to compensation, pay increases, fringe benefits, and/or benefits associated with hiring and promotion.

6.     Class certification is sought separately for counts one, two, three, and four set forth below.  Class certification is sought under Federal Rule of Civil Procedure 23(b)(2) for equitable relief on plaintiff's disparate impact claim.  Class certification is also appropriate under Rule 23(b)(2) for the equitable relief sought on plaintiff's pattern-or-practice claims and/or disparate treatment claims.  For plaintiff's causes of action for punitive damages, she seeks class certification under either Rule 23(b)(2) as part of the relief available at Stage I of a bifurcated trial of her pattern or practice claim for injunctive relief, and/or as a hybrid certification under both Rules 23(b)(2) and 23(b)(3).

7.     The named plaintiff is a member of the classes she seeks to represent for each of the three Title VII causes of action stated and her cause of action under 42 U.S.C. § 1981.  The prosecution of Plaintiff's claims requires adjudication of

these questions common to the putative class: whether defendant has engaged in disparate impact and/or disparate treatment race and/or color discrimination in subjecting Plaintiff and putative class members to lesser compensation, pay increases, fringe benefits, and/or benefits associated with hiring and promotion made unlawful under Title VII of the Civil Rights Act of 1964 and/or 42 U.S.C. § 1981, as amended?

8.     Certification of the proposed class of African-American Clinic Managers and/or Clinic Managers of color, is the most efficient, economic, and judicious means of presenting the evidence and arguments to resolve such questions for the plaintiff, individuals within the class, and the defendant because, (a) the individual claim of the named plaintiff requires resolution of the common question of whether the defendant has engaged in a systemic pattern of race and/or color discrimination against African-Americans and/or individuals of color with regard to their compensation, pay increases, fringe benefits, and/or benefits associated with hiring and promotion; (b) the named plaintiff seeks remedies to undo the adverse effects of such discrimination in her life and careers and to prevent continued race and/or color discrimination; and (c) the named plaintiff has standing to seek such relief in part because of the adverse effect that race and/or color discrimination has on her own interest in working and living in conditions free from the pernicious effects of race and/or color bias.

9.     To gain such relief for herself, and for the putative class members, the named plaintiff must first establish the existence of disparate impact and/or systemic race and/or color discrimination as the premise of the relief she seeks. Without class certification, the same evidence and issues would be subject to repeated re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

10.    The named plaintiff's individual and class claims are premised upon the traditional bifurcated method of proof and trial for disparate impact and systemic disparate treatment claims of the type at issue in this complaint.  Such a bifurcated method of proof and trial is the most efficient method of resolving such common issues.

11.    The defendant has acted on grounds generally applicable to the class by adopting and following systemic practices and procedures that are discriminatory based on race and/or color.  The defendant's race and/or color discrimination is its standard operating procedure rather than a sporadic occurrence.

12.    The defendant has refused to act on grounds generally applicable to the class by failing to adopt or follow selection procedures without disparate impact or otherwise systemically discriminate against African-Americans and/or individuals of color.  The defendant's systemic discrimination and refusal to act on grounds not discriminatory has made appropriate final injunctive relief and declaratory relief

regarding the class.

13.    Injunctive and declaratory remedies are the predominant relief sought. They are both dependent upon proof of the defendant's individual and class-wide liability at the end of Stage I of a bifurcated trial.  Such determination at Stage I is also the essential predicate for the named plaintiff's and class members' entitlement to monetary and non-monetary remedies at Stage II of such a trial.

14.    Declaratory and injunctive relief flows directly and automatically from proof of the common questions of law and fact regarding systemic race and/or color discrimination against African-Americans and/or individuals of color.  Such relief is the factual and legal predicate for the named plaintiff's and the class members' entitlement to monetary and non-monetary remedies for individual losses caused by such systemic discrimination.

15.    The relief necessary to remedy the claims of the plaintiff is the same relief necessary for the class, and therefore satisfies the typicality requirement of Rule 23(a)(3).

16.    The named plaintiff seeks the following relief for her individual claims and those of the class: (1) a declaratory judgment that the defendant has engaged in systemic practices having a disparate impact on compensation, pay increases, fringe benefits, and/or benefits associated with hiring and employment, paid or received by the named plaintiff and putative class members compared to those paid or

received by white, non-African-American Clinic Managers, and a pattern-or-practice of treating these same individuals disparately; (2) a permanent injunction against such continuing discrimination; (3) restructuring the defendant's hiring, compensation and/or salary administration plans and practices, benefit, and promotion practices;  (4) lost wages; (5) such other monetary and non-monetary remedies necessary to make the plaintiff and the class she seeks to represent whole from the defendant's discriminatory practices; and (6) attorneys' fees and expenses.

17.    The class that the named plaintiff seeks to represent exceeds 75 individuals and is too numerous to make joinder practicable.

18.    The class representative's interests are coextensive with those of the putative class because she seeks to remedy the defendant's discriminatory employment practices so African-Americans and/or individuals of color do not receive total compensation in amounts and at rates disproportionately lower than white, non-African-Americans.  The class representative is able and willing to represent the class fairly and vigorously, as she pursues her goals common to the class through this action.

19.    The plaintiff's counsel are qualified, experienced, and able to conduct the litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity.  The combined interest, experience and resources of the plaintiff and her counsel to litigate

competently the individual and class claims of the race and/or color-based employment discrimination at issue satisfy the adequacy of representation requirement under Fed. R. Civ. P. 23(a)(4).

20.    Alternatively, certification is sought under a combination of Fed. R. Civ. P. 23(b)(2) and 23(b)(3). The plaintiff restates and incorporates by reference the above paragraphs to support such alternative grounds for class certification.

21.    Alternatively, certification is sought under Fed. R. Civ. P. 23(b)(3). The common issues of fact and law affecting the claims of the named plaintiff and the proposed class members, including, but not limited to, the common issues identified in the above paragraphs, predominate, over any issues affecting only individual claims.  A class action is superior to other means for the fair and efficient adjudication of the claims of the named plaintiff and members of the proposed class. The cost of proving the defendant's pattern and practice of discrimination makes it impracticable for the named plaintiff and members of the proposed class to control the prosecution of their claims individually.

22.    As additional facts supporting class certification, plaintiff adopts and incorporates paragraphs 23 - 102 herein below.

## V.    **CAUSES OF ACTION**

### A. **COUNT 1: TITLE VII – DISPARATE IMPACT**

23.    The plaintiff restates and incorporates paragraphs 3 – 21 above with

the same force and effect as above.

24.    The plaintiff, Clarissa Arnold, sues for disparate impact race and/or color discrimination under Title VII of the Civil Rights Act, as amended.

25.    Plaintiff Arnold is a black, African-American female.

26.    During the relevant liability period, Plaintiff Arnold worked as a salaried paid Clinic Manager.

27.    According to its website, AFC operates urgent care centers, sometimes called walk-in clinics, which have become a very popular medical solution for millions of Americans.

28.    AFC contends these centers provide convenience and affordability that are not possible with more traditional medical providers.

29.    The primary purpose of AFC's urgent care centers is to provide quality health care services, in an expeditious manner, during convenient hours and on weekends without the need for a prior appointment.

30.    There are approximately ten (10) urgent care centers in Tennessee owned by AFC.

31.    There are approximately forty-five (45) urgent care centers in Alabama owned by AFC.

32.    There are approximately seven (7) urgent care centers in Georgia owned by AFC.

33.    There are approximately four (4) urgent care centers in Florida owned by AFC.

34.    Clinic Managers responsibilities and duties are similar regardless of geographic location, clinic size, or oversight, as AFC utilizes a standardized "AFC Clinic Manager Handbook" to train all new clinic managers.

35.    The standardized AFC Clinic Manager Handbook and standardized policies and practices therein, or incorporated therein, are important to AFC for consistency of operations among its many urgent care centers and consistency regarding patient's experiences among the centers.

36.    The AFC Clinic Manager Handbook expressly teaches that consistency and standardization are important to the company.

37.    This handbook represents that its contents provide all clinic managers with the knowledge necessary to perform their jobs wherein it sets forth.

38.    Companywide, AFC uses a single written job description for all its clinic managers.

39.    Individuals that are newly hired or newly promoted to perform the role of the clinic manager do not receive their regular classification as a Clinic Manager until successfully completing a 180-day introductory period and evaluation.

40.    Clinic managers are trained that they must complete this 180-day introductory period in AFC's policy, HR-175, titled Introductory Period.

41.     At AFC's urgent care centers, all clinic managers are salaried paid and classified as overtime exempt, regardless of their assigned urgent care center's location, size, or number of patients and regardless of the clinic manager's prior management experience.

42.     Qualified Clinic Manager candidates need not possess a degree in management, business degree, or the like, nor are they required to have management or executive experience.

43.     Candidates need only hold an associate degree in a non-specified discipline, or three years of medical experience.

44.     Many of AFC's clinic managers were formerly hourly paid medical assistants possessing only associate degrees or certificates.

45.     All clinic managers engage in similar tasks requiring equal skill, such as:

> a.     Testing the fax machine;
> b.     Sterilizing instruments;
> c.     Emptying sharps containers;
> d.     Cleaning consultation rooms after patients leave before new patients are assigned to the room;
> e.     Performing patient surveys via phone;
> f.     Addressing patient complaints;
> g.     Turning on and testing equipment prior to the days start;
> h.     Performing drug screens;
> i.     Performing blood alcohol tests;
> j.     Performing blood pressure tests;
> k.     Drawing labs and performing lab work;
> l.     Administering injections;

11

m.  Checking-in/registering patients;
n.  Directing physicians to appropriate consultation rooms;
o.  Catering to physicians and nurse practitioners needs;
p.  Printing paperwork for patients checking-out;
q.  Discharging/checking-out patients;
r.  Walking patients to their cars;
s.  Answering the phones;
t.  Sending a litany of faxes to corporate and 3rd parties;
u.  Calling or faxing patient referrals to 3rd party providers;
v.  Checking-in and stocking deliveries;
w.  Calling patients and providing them lab and x-ray results;
x.  Calling prescriptions into patients' pharmacies;
y.  Washing and folding laundry, cleaning and sweeping general areas, emptying the trash, washing and putting away dishes, cleaning restrooms, cleaning the restrooms, spraying for bugs, etc.; and,
z.  Other duties normally performed by hourly medical staff during the shift.

46.    Despite the similarity of clinic manager positions company-wide, requiring equal skill and effort and working under similar conditions, AFC's policies and/or practices cause African-Americans and/or individuals of color like Plaintiff to receive lesser compensation, pay increases, fringe benefits, and/or benefits associated with hiring and promotion compared to Caucasians working as clinic managers.

47.    African-American clinic managers and/or clinic managers of color are or were adversely and disproportionately impacted because of experiencing, or

having experienced the following terms and conditions of employment, which discriminate based on race and/or color or color, including but not limited to:

    a. White, non-African-American clinic managers are paid starting salaries that exceed the starting salaries paid to African-American clinic managers and/or clinic managers of color and this pay disparity continues throughout their employment with AFC;

    b. White, non-African-American clinic managers clinic managers progress through the applicable salary range established by AFC more quickly than African-American clinic managers and/or clinic managers of color; and,

    c. The increased frequency and rate in which White, non-African-American clinic managers are promoted within AFC's organization exceeds that of African-American clinic managers and/or clinic managers of color.

48.    For example, due to the rate of pay offered upon hire and/or the increases, merit or otherwise received, Emily Hill, Allen Duke, and Michelle Tolbert, each worked as a clinic Manager, each is white in color, each is Caucasian, and each earn(ed) total compensation exceeding that received by Plaintiff for the same or similar work.

49.    After the filing of Plaintiff's charge of discrimination with the EEOC, Defendant has systematically increased the wages of African-American clinic managers, to equalize their rates of compensation compared to the compensation paid and received by white, non-African-American clinic managers.

50.    Shortly after increasing these clinic managers' compensation so that their salaries appear competitive, AFC terminated their employment.

51.    AFC's policies, patterns or practices, and/or selection procedures deny African-Americans and/or individuals of color, compensation, pay increases, fringe benefits, and/or benefits associated with hiring and promotion equal to that received by white, non-African-Americans.

52.    These policies have disparately impacted the named plaintiff and similarly situated class members.

53.    There are statistically significant disparities in the total compensation and annual pay increases received by African-American clinic mangers and/or clinic managers of color, compared to white, non-African-American clinic managers.

54.    Defendant's practices discriminate between clinic managers based on race and/or color by providing white, non-African-American clinic managers higher total compensation at frequencies greater than that of African-American clinic managers and/or clinic managers of color, possessing or who possessed equal skill and responsibility.

55.    The class representative was denied equal total compensation and other terms and conditions of employment relative to that received by non-African-American, white clinic managers, and she was subjected to the company-wide practices applicable to the class.  Her individual claims depend on the same statistical, anecdotal and direct evidence that will establish a disparate impact and

pattern-or-practice of race and/or color-based disparities for the class.

56.    AFC's directors do not have unfettered discretion to use their own judgment relative to the compensation of clinic managers, without regard to any company-imposed criteria or standards when making compensation decisions. Instead, those decisions are subject to the same centralized systems administered by corporate executives and corporate policies.

57.    As noted *supra* ¶¶ 34-45*,* clinic managers need not have a post-graduate education, the training in minimal and standardized, thus the position is entry level and AFC routinely hires or employs individuals with little to no experience as a clinic manager.  Accordingly, the duties and responsibilities of clinic managers at AFC are substantially similar if not the same and require equal or similar skill, effort and responsibilities under similar working conditions regardless of the location or size of the clinic.  Such facts create a *prima facia* inference that race and/or color plays a significant role in its hiring and related compensation practices.

58.    AFC has no policy against uniform employment practices.

59.    Defendant's compensation decisions and/or systems include(s) subjectivity and race and/or color stereotyping that causes disparate impact in the amount of total compensation paid for clinic manager positions.  Plaintiff is aware of no other criteria which causes such disparate impact other than race and/or color

bias, subjectivity and stereotyping.  Plaintiff is unaware of any other specific criteria capable of separation and analyses.

60.     The named plaintiff brings such claims against defendant on her own behalf and on behalf of a putative class of similarly situated African-American, and/or non-white clinic managers.

61.     Plaintiff seeks <u>only</u> equitable relief under this Count, including declaratory relief, injunctive relief and incidental back-pay for such unlawful disparate impact, making class certification appropriate under Federal Rule Civil Procedure 23(b)(2).

62.     Plaintiff's disparate impact claim requires a common answer that resolves the class claims "in one stroke" based on these three questions of fact and/or law common to all putative class members: (1) whether the contested policies and practices have disparate impact; (2) whether such policies and practices are a "business necessity" despite such adverse impact; and (3) whether there are alternatives to such policies and practices that serve the same purpose with less adverse impact.

63.     Plaintiff's disparate impact claim involves few, if any, individualized questions of law or fact.  The evidence to prove such claim will focus on statistical disparities, rather than specific incidents, and on competing explanations for those disparities.

64.    Defendant's policies and practices are not valid, job related, or justified by business necessity.  There are alternative policies and procedures available to the defendant with less disparate impact on African-American clinic managers and/or clinic managers of color, having equal or greater validity and job relatedness.

65.    The plaintiff and the class she seeks to represent have been directly affected by the discriminatory policies, practices and procedures.  The claims of the named plaintiff, and the relief to remedy the claims of the named plaintiff, are the same as the claims of the putative class and the relief necessary to remedy the claims of the putative class.  The claims and the relief sought by the named plaintiff are also typical of that of the putative class.

66.    The plaintiff and the class she seeks to represent have no plain, adequate or complete remedy at law to redress the wrongs alleged, and this suit for injunctive and declaratory remedies is their only means of securing adequate relief. The plaintiff and the class she seeks to represent are now suffering, and will continue to suffer, irreparable injury from the defendant's unlawful policies and practices as set forth herein unless enjoined and remedied by this Court.

**WHEREFORE**, the plaintiff respectfully prays this Court assume jurisdiction and provide plaintiff and the class she seeks to represent injunctive relief and declaratory relief, equitable relief, incidental back-pay (plus interest), the value of lost benefits, attorneys' fees, costs, and expenses, and all other relief

allowed or deemed just and proper by the Court.

## B. COUNT 2: TITLE VII – DISPARATE TREATMENT

67.    The plaintiff restates and incorporate paragraphs 3 – 21 and 25 – 45, 48, above with the same force and effect as above.

68.    The plaintiff, Clarissa Arnold, sues for a pattern-or-practice of disparate treatment based on race and/or color under Title VII of the Civil Rights Act, as amended.

69.    Plaintiff Arnold brings claims against defendant on her own behalf and on behalf of a putative class of similarly situated African-American clinic managers and/or clinic managers of color.

70.    Defendant has engaged in a pattern-or-practice of disparate treatment against African-American clinic managers and/or clinic managers of color with respect to compensation, pay increases, fringe benefits, and/or benefits associated with hiring and promotion.

71.    Defendant provided less favorable employment and compensation opportunities to the plaintiff and similarly situated African-American clinic managers and/or clinic managers of color, than that provided to white, non-African-American clinic managers with equal or similar skill.

72.    The duties and responsibilities of clinic managers require equal skill, effort, and responsibilities under similar working conditions regardless of the

location of the clinic, the size of the clinic, and its revenue or number of patients.

73.     Defendant's corporate office controls and sets its hiring, compensation, and promotion practices and criteria.

74.     The putative class which plaintiff seeks to represent consists of African-American clinic managers and/or clinic managers of color subject to a pattern and practice of systemic race and/or color discrimination in employment. Such discrimination adversely affects the plaintiff's and putative class members' employment and compensation opportunities.

75.     Plaintiff's pattern-or practice claim focuses solely on the broad pattern and practice, not the merits of individual claims.  Individual instances of disparate compensation are merely manifestations of such common policy or pattern-or practice.

76.     A class-wide *presumption* of entitlement to backpay for every class member results from a finding of a pattern-or-practice of discrimination at Stage I of the proceeding.

77.     The pattern-or-practice question is common to every class member because it must be answered by the same class-wide statistics and centralized company-wide compensation setting processes and benefit setting processes that apply to the clinic managers in the same way.

78.     The pattern-or-practice claim is common to both: (1) class-wide

liability and injunctive relief at Stage I of the bifurcated trial required; and (2) the individualized presumption of individual damage that carries over to Stage II of such trial.

79.     Plaintiff is pursuing her disparate treatment race and/or color-based discrimination class claims under Fed.R.Civ.P. 23 and satisfy all requirements under this rule.

80.     The prosecution of the claims of the named plaintiff requires adjudication of the questions common to the putative class: whether the defendant has engaged in race and/or color discrimination in its compensation and promotion practices in a manner made unlawful by the statutes under which this action is brought.

81.     The plaintiff and the class she seeks to represent have been directly affected by the discriminatory policies, practices and procedures.  The claims of the named plaintiff and the relief necessary to remedy the claims of the named plaintiff is the same as the claims of the putative class and the relief necessary to remedy the claims of the putative class.  The claims and the relief sought by the named plaintiff is typical of that of the putative class.

82.     The defendant willfully violated Title VII by compensating and promoting African-American clinic managers and/or clinic managers of color at unequal rates and with unequal frequency as compared to white, non-African-

American clinic managers where they worked jobs of equal skill, responsibility and effort under similar working conditions. Defendant's conduct was willful and in reckless disregard to federal law and statutes. The requested injunction, declaratory judgment and backpay flow directly from the disparate impact and/or pattern-or-practice proven at Stage I of such a bifurcated trial.

83.    Backpay is "incidental" to determining liability because it will flow directly from liability to the class on the claims supporting the injunctive and declaratory relief.

84.    Punitive damages also flow directly from the defendant's wrongful conduct proven at the pattern-or-practice stage of the case and not from any individualized evidence about class members.

85.    The predominance standard of Rule 23(b)(3) is satisfied here because proof of the class-wide pattern-or-practice establishes liability at Stage I and entitlement of each class member to: affirmative injunctive and declaratory relief to undo the effects of that class-wide pattern-or-practice; (2) a presumption of individualized harm for each class member that can only be overcome if the defendant carries a burden of "clear and convincing evidence" that the class members compensation and position within the company would have remained the same even absent the proven patter-or-practice of providing non-white, African-American clinic managers less total compensation, promotions, and benefits than

white, non-African-Americans for the same job.

**WHEREFORE**, the plaintiff respectfully prays this Court assume jurisdiction and provide plaintiff and the class she seeks to represent injunctive relief and declaratory relief, equitable relief, back-pay (plus interest), the value of lost benefits, attorneys' fees, costs and expenses, and all other relief allowed or deemed just and proper by the Court.

### C. COUNT 3:  42 U.S.C. § 1981 –  INTENTIONAL DISPARATE IMPACT / TREATMENT

86.    The plaintiff, Clarissa Arnold, relative to her race discrimination claims, restates and incorporates by references paragraphs 3 – 21 and 23 – 85, with the same force and effect as above.

87.    The named plaintiff and the class she seeks to represent have been subject to systemic racial discrimination including, but not limited to, a pattern and practice of intentional discrimination and a battery of practices intentionally causing unlawful disparate impact on their employment and compensation opportunities.

88.    Such racial discrimination includes a policy and practice of restricting African-American's employment opportunities through its compensation procedures, promotion selection procedures, its racially hostile reputation and conditions of work, and unequal terms and conditions of employment.

89.    Defendant's compensation and promotion procedures incorporate the following racially discriminatory practices: (1) reliance upon subjective procedures

and criteria which permit and encourage the incorporation of racial stereotypes and bias of its exclusively Caucasian executive management staff; (2) refusal to establish or follow policies, procedures, or criteria that reduce or eliminate intentional racial bias or stereotypes within the compensation and promotion processes and/or disparate impact arising from the same; (3) refusal to post or announce promotions in a manner intended to reach equally Caucasians and African-Americans; and (4) pre-selection of Caucasians for vacant director positions before those opportunities become known.

90.    Defendant's compensation and selection practices and procedures are and were intended to disparately impact the named plaintiff and the class she seeks to represent.

91.    Defendant's compensation and selection practices and procedures are and were pretext for intentional race discrimination.

92.    Defendant's compensation and selection practices and procedures have adversely affected the named plaintiff and the class she seeks to represent, which include but are not limited to the following: the encouragement or ratification of racially demeaning stereotypes regarding the capabilities and work ethic of African-Americans compared to Caucasians.

93.    The defendant willfully violated 42 U.S.C. § 1981 by intentionally failing to promote and compensate African-American clinic managers at unequal

rates compared to Caucasians where their jobs required equal skill, responsibility and effort under similar working conditions.

94.    Defendant has continuously engaged in, condoned and ratified discrimination with constitutes a continuing violation of 42 U.S.C. § 1981, as amended.

95.    The named plaintiff has no plain, adequate, or complete remedy of law to redress the wrongs alleged and this suit for back-pay, an injunction and other equitable relief, and a declaratory judgment is her only means of securing adequate equitable relief.

96.    Punitive damages are available under 42 U.S.C. § 1981 and flow directly from the defendant's wrongful conduct and not from any individualized evidence about class members.

97.    From Defendant's discriminatory employment practices, Plaintiff Clarissa Arnold has experienced harm, including loss of compensation, and other employment benefits.

**WHEREFORE**, the plaintiff respectfully prays this Court assume jurisdiction and provide plaintiff and the class she seeks to represent injunctive relief and other equitable relief, declaratory relief, lost wages (plus interest), the value of lost benefits, punitive damages, attorneys' fees, costs and expenses, and all other relief allowed or deemed just and proper by the Court.

## D. COUNT 4: TITLE VII – PUNITIVE DAMAGES

98.    Plaintiff restates and incorporates paragraphs 67-85 above with the same force and effect as above.

99.    Defendant has acted maliciously, willfully, and with reckless disregard for the rights of the plaintiff and the class she seeks to represent, making punitive damages an appropriate remedy under 42 U.S.C. §1981a.

100.    The defendant willfully violated Title VII by subjecting the plaintiff and other similarly situated African-American clinic managers and/or clinic managers of color to unequal compensation and promotion opportunities compared to white, non-African-American clinic managers.  Defendant's conduct was willful and in reckless disregard to federal law and statutes.

101.    Such punitive damages are sought based on the defendant's conduct towards African-Americans and/or people of color, not for any individualized injury or harm.

102.    The entitlement to such damages is properly part of the same proof at Stage I of a bifurcated trial for class-wide injunctive relief sought as part of Count II of plaintiff's Causes of Action, and do not require individualized proof from each member of the class towards whom such discrimination was directed.

**WHEREFORE**, the plaintiff respectfully prays this Court assume jurisdiction and relative to Counts II of her complaint, award punitive damages to plaintiff and the class she seeks to represent.

## IV.    PRAYER FOR RELIEF

103.   The plaintiff, on behalf of herself and the class she seeks to represent, seeks injunctive relief and declaratory relief, equitable relief, lost wages (plus interest), punitive damages under Title VII, punitive damages under § 1981, and attorney's fees, costs and expenses.

Respectfully submitted,

/s/ Robert J. Camp
Robert J. Camp
Counsel for the Plaintiff

OF COUNSEL:
**WIGGINS, CHILDS, PANTAZIS,**
**FISHER & GOLDFARB, L.L.C.**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205/314-0500

PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY

/s/ Robert J. Camp
Robert J. Camp

**SERVE DEFENDANT BY CERTIFIED MAIL AT:**

American Family Care, Inc.
c/o Dr. Bruce Irwin, its Registered Agent
3200 Cahaba Beach Road
Birmingham, Alabama 35242